IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

MANUEL ANDERSON and CHERYL ANDERSON,

      Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CIV-22-991-D

## ORDER

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support [Doc. No. 45]. Plaintiffs have filed a response [Doc. No. 49], to which Defendant replied [Doc. No. 62]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiffs allege that their property suffered storm damage on or about October 14, 2021, during the term of Plaintiffs' home insurance policy issued by Defendant. Plaintiffs submitted a property damage claim to Defendant, which was investigated and denied. According to Defendant, the estimate to repair the recent storm damage to Plaintiffs' property did not exceed the policy deductible. Defendant inspected the property in November of 2021 and did not find any other evidence of recent damage. After hiring a third-party engineer to inspect the property, Defendant asserts that the alleged roof damage resulted from a storm in 2015 or earlier, well before the term of Plaintiffs' insurance policy.

Plaintiffs brought this breach-of-contract action against Defendant for failing to pay for losses that Plaintiffs allege are covered under their insurance policy. Defendant seeks summary judgment in its favor with respect to Plaintiffs' breach-of-contract claim. Defendant argues that the only evidence of loss for the damage claimed is outside the policy period stemming from 2015 or earlier, thereby negating Plaintiffs' breach-of-contract claim as a matter of law [Doc. No. 45, at 1]. In response, Plaintiffs assert that because the Policy here is an "all-risks" or "all-perils" policy, State Farm bears the burden of proving coverage for an accidental or fortuitous loss is excluded [Doc. No. 56, at 23]. Defendant responds that Plaintiffs incorrectly argue that because their Policy is "all risk," it does not matter what was reported or when it occurred as any damage is covered unless excluded. Defendant further asserts that Plaintiffs improperly argue that State Farm has not proven any exclusion since State Farm did not deny the claim based on an exclusion or move for summary judgment on an exclusion [Doc. No. 62, at 2]. Thus, Defendant reiterates their main argument that Plaintiffs cannot prove, with any admissible evidence, the damage they claim to their house occurred after issuance of their Policy. *Id.*

## UNDISPUTED MATERIAL FACTS

Defendant lists 26 undisputed material facts ("UMF") [Doc. No. 45, at 3-10, ¶¶ 1-26]. Plaintiff admits[1] UMFs 1, 5-8, 10-12, 14-21, and 24; admits in part UMFs 2-4, 9, 13, and 25-26; denies UMFs 22-23; and finally asserts additional material facts ("AMF") 1-55 [Doc. No. 56, at 1-21].

_____

[1] Plaintiffs' responses of "Admitted, but incomplete" the Court treats as admitted.

I.      **Plaintiffs' Property and Policy**

Plaintiffs' house at 10428 Foxhorn Circle, Midwest City was built in 1996 and purchased by Plaintiffs in 2017 – they did not own the home in 2015 [Doc. No. 45, at 3, ¶ 1]. In 2017, Plaintiffs took out a homeowners' policy with State Farm, Policy No. 36-B9-F836-0 ("the Policy"), the relevant iteration of which was in effect from July 21, 2021 to July 22, 2022. *Id.*, ¶ 2.

II.     **The October 14, 2021 Storm**

Plaintiffs testified that while at home on October 14, 2021, a storm occurred where hail hit Plaintiffs' house [Doc. No. 45, at 4, ¶ 5; Doc. No. 56, at 6]. After the storm, Plaintiffs became aware that there were two leaks in the interior of the house that they had not noticed prior to the storm [Doc. No. 56, at 6]. As a result, Plaintiff Mr. Anderson contacted his State Farm agent to ask what the proper procedure was to report a claim, and the agent advised Mr. Anderson to call a roofer to inspect the roof for damage, and then to report a claim to State Farm if the damage exceeded his deductible. *Id.*

During the next month, sometime in between November 6 and November 8, 2021 [Doc. No. 45-6, at 4], Plaintiffs asked Gerald "Neil" Cagle at All American Roofing for a roof inspection [Doc. No. 45, at 4, ¶ 8]. On November 8, 2021, Cagle performed the roof inspection and prepared an estimate of $36.821,01,[2] after tax, to fully replace the roof of the house and the shed, and all guttering [Doc. No. 45, at 5].

---

[2] During his deposition, Cagle changed his estimate to $51,452.28, citing a mistake [Doc. No. 45, at 5, n.1]. However, on November 20, 2023, Plaintiffs' counsel produced a new estimate from All American Roofing which totals $55,159.22. *Id.*

On November 8, 2021, Plaintiff Mr. Anderson made a claim to State Farm, which was assigned claim number 36-26Z2-12Q ("the Claim") for hail damage to his roof and shed, with interior leaking [Doc. No. 45, at 5, ¶ 10]. For the Claim, State Farm and Plaintiffs treated the date of loss as October 14, 2021, when the storm occurred. *Id.*

### III.    State Farm's Initial Claim Investigation by Johnny Gage

On November 17, 2021, independent adjustor Johnny Gage inspected Plaintiffs' property on behalf of State Farm for damage from wind, water and hail, took photographs, and prepared a report. *Id.* at 6, ¶ 11. During his inspection, in addition to finding "old and new hail" damage to one of Plaintiffs' air conditioning ("AC") units and "interior leaking to [the] living and front sitting room," Gage observed "very old hail damage" to the roof of the house, gutters, and other structures, specifically noting that "evidence of large hail that appears to be much older," evidenced by the "lack of spatter to support large hail," "expose[d] fiberglass," and "hail strikes [that were] grayed out." *Id.* Ultimately, Gage determined that the majority of damage observed was likely from a much older date of loss. *Id.*

Mr. Anderson told Gage on November 17, 2021 that the large hole in the shed roof was due to a branch that fell during the October 14, 2021 storm and that Anderson had cut up and removed the limb, then tarped the hole with plastic that had been covering exercise equipment he had outside [Doc. No. 56, at 6, AMF 7]. Gage told Mr. Anderson that he did not believe the hole and the hail damage to the roof of the house and the shed were caused by the hailstorm on October 14, 2021, partly because of the age of the plastic tarp. *Id.* at 14, AMF 30. Also on November 17, 2021, Gage prepared an estimate for

covered damages under the Policy from the reported date of loss (October 14, 2021, the date of the storm) [Doc. No. 56, at 9, AMF 13], which included the two stains on Plaintiffs' ceiling and damage to the AC coils of Plaintiffs' AC unit [Doc. No. 45, at 6, ¶ 12]. The loss determination from Gage totaled $633.90, of which $406.73 was for repair to the interior damage (ceiling stains), $192.73 for the exterior damage (AC coils), and $34.44 for debris removal. *Id.*

Finally on November 17, 2021, Gage communicated the claim decision to Plaintiffs [Doc. No. 45, at 7, ¶ 13] via two letters – one of which stated that State Farm's "inspection did not reveal any ***covered*** accidental physical loss to [the Plaintiffs'] roof" (emphasis added) and the other which stated that State Farm had "determined [the Plaintiffs'] loss [of $633.90 as noted above] does not exceed [their] $3,657.00 deductible." [Doc. No. 56, at 15, ¶ 13 (citing [Doc. No. 45-14])]. Gage also entered a note in the claim file stating "Insured understood that he has older damage and why it could not be covered without further questions." [Doc. No. 56, at 15, ¶ 13 (citing [Doc. No. 45-5])].

## IV.    Plaintiffs' Retention of Coppermark Public Adjusters

On January 26, 2022, Plaintiffs retained Coppermark Public Adjusters ("CPA") to inspect their property [Doc. No. 45, at 7, ¶ 14; Doc. No. 56, at 16, ¶ 14 (citing [Doc. No. 56-1])]. On or about January 29, 2022, Greg Cannon from CPA performed the inspection [Doc. No. 45, at 7, ¶ 14] and took photographs of the roof of Plaintiffs' home showing hail strikes that were black in color, which meant, according to him, that hail strikes were "fresh." [Doc. No. 56, at 16, AMF 34]. On March 24, 2022, State Farm received a request

for a second inspection, along with an estimate from CPA for $101,476.30 [Doc. No. 45 at 7, ¶ 15], and assigned David Camp as the adjuster [Doc. No. 56, at 17, AMF 35].

V.      **State Farm's Second Inspection of Plaintiffs' Property**

On March 25, 2022, State Farm retained Rimkus Engineering ("Rimkus") to perform a second inspection of Plaintiffs' property and notified CPA [Doc. No. 45, at 8, ¶ 16]. State Farm retained Rimkus Engineer Johnny Phantala, who completed his inspection on May 26, 2022. *Id.* at ¶ 17.

Phantala found that the "effects of hail associated with hailstorms that occurred on and/or prior to March 25, 2015, had caused damages (localized fractures and/or circular areas of dislodged granules) to the laminated asphalt composition shingles on the north, west, and east roof slopes of [Plaintiffs'] residence" and "[t]here was no damage caused by hail to the roof covering along the south roof slope of the residence or on the roof covering of the shed." *Id.* Specifically, Phantala concluded that no hail damage was caused to the roof of Plaintiffs' home or shed on October 14, 2021 (when the storm occured) – a date which his generated CoreLogic report showed had 1.1" hail – but all the damage was instead caused by the 1.2" hail that fell on March 15, 2015 [Doc. No. 56, at 18, AMF 42 & 45]. However, on November 8, 2021, State Farm obtained an AccuWeather report that showed 1.75" hail fell on October 14, 2021[3] — which Phalanta's report does not mention. [Doc. No. 56, at 19, AMF 48; Doc. 49-1, at 12].

---

[3] The parties dispute whether the AccuWeather report shows the 1.75" hail falling at the loss location. *Cf.* [Doc. No. 56, at 8, AMF 10] *with* [Doc. No. 62, at 5, AMF No. 12].

Shortly after receiving the Rimkus Report, State Farm notified CPA of Phantala's findings and that State Farm's initial claim decision would remain in place. *Id.* at ¶ 19. Camp accepted Phantala's conclusions in full, and stated State Farm determined the "hail damages were…related to the date of loss 3/25/2015." [Doc. No. 56, at 20, AMF 51 (citing [Doc. No. 56-6; Doc. No. 45-20]).

## VI.    The Present Action

On October 11, 2022, Plaintiffs filed their Petition in state court asserting only a claim for breach of contract [Doc. No. 45, at 8-9, ¶ 20 (citing [Doc. No. 45-2])]. Plaintiffs seek contract damages of $101,467.30 for the failure of State farm to pay the CPA estimate of the same amount. *Id.*

Plaintiffs have testified that they have no training as to the identification of wind or hail damage and are relying on professionals regarding the determination of damage to their property. *Id.* at ¶ 21. Moreover, the deadline for Plaintiffs to file their final list of expert witnesses and serve expert reports was September 5, 2023, and Plaintiffs did not designate an expert (*Id.* (citing [Doc. No. 11]). State Farm has designated Phantala as an expert. *Id.*, at ¶ 25. In his report, Phantala concluded that "the reported hailstorm on October 14, 2021, did not cause damage to the roof coverings on the residence or shed" on Plaintiff's property. *Id.* at 9-10, ¶ 25. Phantala also provided photographs showing several areas where the "grayish-black asphalt binding material" and "reinforcing fibers of the shingle mat" were exposed, explaining that this was "evidence that the asphalt binding material had been exposed for a relatively long period of time" and "had eroded due to the effects of the natural weathering process over the years." *Id.* at 10, ¶ 25.

Phantala further explained that "the sizes of these hail-caused impact marks ranged from ½ inch to 1 ½ inch in diameter, which was consistent with the reported estimated maximum hail sizes detected at the residence location (1.1 inch to 1.9 inch in diameter) between March 25, 2015 and July 16, 2009." *Id.*

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding whether summary judgment is proper, courts do not weigh the evidence and determine the truth of the matter asserted, but determine only whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *See Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

## DISCUSSION

### I.    Breach of Contract

Defendant asserts that it is entitled to summary judgment on Plaintiffs' breach of contract claim because the alleged storm damage occurred before Defendant issued Plaintiffs' insurance policy in 2017 [Doc. No. 45, at 12]. Plaintiffs assert that because the Policy here is an "all-risks" or "all-perils" policy, State Farm bears the burden of proving

coverage for an accidental or fortuitous loss is excluded [Doc. No. 56, at 23]. Defendant

responds that Plaintiffs incorrectly argue that because their Policy is "all risk," it does not

matter what was reported or when it occurred as any damage is covered unless excluded,

and also improperly argue that State Farm has not proven any exclusion, even though

State Farm did not deny the claim based on an exclusion or move for summary judgment

on an exclusion [Doc. No. 62, at 2]. Thus, Defendants reiterate their main argument that

Plaintiffs cannot prove, with any admissible evidence, the damage they claim to their

house after issuance of their Policy. *Id.*

To establish a breach of contract under Oklahoma law, Plaintiffs must prove: "1)

formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the

breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).

"The interpretation of an insurance contract and whether it is ambiguous is a matter of

law for the Court to determine and resolve accordingly." *Dodson v. St. Paul Ins. Co.*, 812

P.2d 372, 376 (Okla. 1991). When a provision is clear, consistent, and unambiguous, the

Court will accept its plain and ordinary meaning, and the contract will be enforced to

carry out the intentions of the parties. *Id.*

Here, there is no question that the parties entered into a valid contract. Thus, the

analysis focuses on whether there was a breach and resulting damages. Unless damage to

Plaintiffs' property was the result of a "covered" loss that occurred within the Policy's

effective period of July 21, 2021 to July 22, 2022, there can be no breach of contract

relating to such loss. This determination turns on whether the CPA-estimated damages

were caused by (1) hail that fell in 2015 or earlier, before Plaintiffs moved into their

property in 2017, or by (2) hail that fell within the Policy's effective period, specifically

the storm that occurred on October 14, 2021.

The Court notes several disputed material facts that preclude summary judgment.

For instance, to reach his conclusion that no hail damage was caused to the roof of

Plaintiffs' home or shed from the storm on October 14, 2021, Phantala relied on a

CoreLogic report that showed 1.2" hail falling on March 15, 2015; however, the same

report shows that 1.1" hail fell on October 14, 2021 [Doc. No. 56, at 18, AMF 42 & 45].

Moreover, these facts are made murkier by the AccuWeather report State Farm obtained

on November 8, 2021 showing 1.75" hail being produced on October 14, 2021 in the area

of Plaintiff's house [Doc. No. 56, at 19, AMF 48; Doc. 49-1, at 12]. Thus, facts conflict

on whether 1.1" hail as shown by the CoreLogic report relied upon by Phantala, or 1.75"

hail reflected in the AccuWeather report – both attributed to the October 14, 2021 storm –

were as capable of causing the damage noted by Phantala and others as was the 1.2" hail

that fell in 2015.

From the CoreLogic report, the estimated maximum hail size that fell at the

location of Plaintiffs' property on October 14, 2021 was 1.1 inches (or 2.79 cm) [Doc.

No. 45-19, at 59]:

## Storm Events

| Date | At Location | Within 1 mi / 1.61 km | Within 3 mi / 4.83 km | Within 10 mi / 16.09 km |
|---|---|---|---|---|
| | | Estimated Maximum Hail Size | | |
| Apr 23, 2022 | -- | -- | 0.8 in / 2.03 cm | 1.1 in / 2.79 cm |
| Nov 10, 2021 | -- | -- | 0.75 in / 1.91 cm | 1 in / 2.54 cm |
| Oct 14, 2021 | 1.1 in / 2.79 cm | 1.1 in / 2.79 cm | 1.3 in / 3.3 cm | 1.6 in / 4.06 cm |

The report reflects hail of 1.2 inches (or 3.05 cm) on March 25, 2015, as shown below, which is a difference of only 0.1 inches or 0.26 cm (*Id.* at 60).

| Mar 25, 2015 | 1.2 in / 3.05 cm | 1.2 in / 3.05 cm | 1.2 in / 3.05 cm | 1.6 in / 4.06 cm |
|---|---|---|---|---|
| Apr 13, 2014 | 0.9 in / 2.29 cm | 1 in / 2.54 cm | 1 in / 2.54 cm | 1.1 in / 2.79 cm |
| Oct 14, 2013 | -- | -- | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm |
| Jun 16, 2013 | -- | -- | 1 in / 2.54 cm | 1.2 in / 3.05 cm |
| May 31, 2013 | 0.9 in / 2.29 cm | 1 in / 2.54 cm | 1.1 in / 2.79 cm | 1.6 in / 4.06 cm |
| May 20, 2013 | 1.9 in / 4.83 cm | 2.3 in / 5.84 cm | 3 in / 7.62 cm | 3.1 in / 7.87 cm |

The parties also dispute the exact location *where* the 1.75" hail fell, according to the AccuWeather report. *Cf.* [Doc. No. 56, at 8, AMF 10] *with* [Doc. No. 62, at 5, AMF No. 12]. Defendant argues that the "cited CoreLogic data [used by Phantala] does not show that 1.1" hail definitively fell at Plaintiffs' Property on October 14, 2021" because CoreLogic "list[s] the estimated maximum hail size at the subject property, as well as within a 1-, 3-, and 10-mile radius of the subject property." [Doc. No. 62, at 9, AMF No. 47 (citing [Doc. No. 45-19, at 12])]. Notably, the CoreLogic report shows that hail produced on October 14, 2021 within a three and ten mile radius was actually *larger* than the 1.1" size reported at the location of Plaintiffs' home.

Finally, there are disputed facts surrounding Gage's inspection of Plaintiffs' property on November 17, 2021. For example, Defendant indicates that to support his conclusion of "very old hail damage" and "evidence of large hail that appears to be much older", Gage pointed to "lack of spatter to support large hail," "expose[d] fiberglass," and "hail strikes [that were] grayed out." [Doc. No. 45, at 6, ¶ 11]. However, Plaintiffs argue Gage testified that there was no algae staining or mildew staining in the vicinity of the

shingle that would have created the conditions necessary for spatter to even exist [Doc. No. 56, at 12, AMF 23-25], and Gage also testified that the reason why portions of the top photo shown on page 13 of Plaintiffs' Response looked black but not gray was because of the picture being "in shadow." *Id.* at AMF 27. When presented with other photographs that showed black shingle mat, Gage testified that "[i]n the photo it may look black, but in person, it was gray." *Id.* at 13, AMF 28. The parties further dispute whether Gage based his decision that all the hail damage to the roof of Plaintiffs' home and shed occurred before October 14, 2021 on the much older age of the plastic tarp covering exercise equipment outside (*Cf. Id.* at 6, AMF 7 and [Doc. No. 56, at 14, AMF 30] *with* [Doc. No. 62, at 5-6, AMF Nos. 7-8] and [Doc. No. 62, at 8, AMF No. 30]), despite conflicting testimony by Plaintiff Mr. Anderson (explaining the tarp was previously used outside to cover exercise equipment) [Doc. No. 56, at 6, AMF 7].

Therefore, viewing the evidence and all reasonable inferences therefrom in favor of Plaintiffs, disputed issues of material facts preclude summary judgment in favor of Defendant on the current record.

## CONCLUSION

Based on the foregoing, the Court finds that there are genuine disputes of material facts that preclude summary judgment on Plaintiffs' breach of contract claim. Accordingly, Defendant's Motion for Summary Judgment [Doc. No. 45] is **DENIED**.

**IT IS SO ORDERED** this 22nd day of August, 2024.

_____

TIMOTHY D. DeGIUSTI
Chief United States District Judge

12